A. V. STEELMAN et al., Appellants,

v.

Marshall ROSENFELD et al., Appellees.

No. 16636.

Court of Civil Appeals of Texas.

Dallas.

Oct. 7, 1966.

Rehearing Denied Nov. 4, 1966.

Saner, Jack Sallinger & Nichols and H. Louis Nichols, Dallas, for appellant.

Strasburger, Price, Kelton, Miller & Martin and Robert H. Thomas, Dallas, for appellee.

CLAUDE WILLIAMS Justice.

For a statement of the nature of this case as well as essential facts reference is made to our previous opinion in this case. Steelman v. Rosenfeld, Tex.Civ.App., 397 S.W.2d 906. See also the opinion of the Supreme Court wherein the case was returned to us for consideration of the points of error presented in appellants' brief. Rosenfeld et al. v. Steelman et al., 405 S.W.2d 301.

Appellants Steelman and Vince, by their first point of error, contend that the judgment of the trial court, rendered following a nonjury trial, must be vacated because there is no evidence to show that the area in question is territory where the sale of alcoholic beverages has been prohibited under the laws of the State of Texas. This point is lacking in merit and must be overruled for several reasons.

This action was brought in the nature of a declaratory judgment suit in which the court was asked to determine and declare whether alcoholic beverages may be lawfully sold on such land in Dallas County, held by appellants as lessees. The sole contested issue before the trial court was the correct location of White Rock Creek in the early 1930's when Prohibition was repealed. White Rock Creek marks the boundary between Precinct 1 and Precinct 4 of Dallas County. It is undisputed in this record that Precinct 1 of Dallas County, Texas is "wet" territory, or an area where alcoholic beverages may be sold. The land in question is located close to White Rock Creek at the present time and all of the parties took the position that if the land was located north and west of White Rock Creek, as it was located in the early 1930's it is in a "wet" territory, or Precinct 1; and if it was south and east of White Rock Creek, as it is today, it would be located in "dry" territory and the sale of alcoholic beverages would be illegal. According to the maps and plats introduced in evidence White Rock Creek flows southerly toward the Trinity River and crosses Second Avenue near Rosenfeld's "First and Last Stop Liquors" store. It then flows in a generally southeasterly direction parallel to Second Avenue and a number of tributaries flow into it. One of these tributaries crosses Second Avenue at the place where appellants leased the land in question. It was appellants' contention that the main channel of White Rock Creek came right up adjacent to Second Avenue in the early 1930's where the tributary flowed under it. The trial court heard numerous witnesses who testified both pro and con concerning the location of the questioned premises in 1930. After hearing twelve witnesses and considering nineteen exhibits

the trial court, by implication, found that the land was truly located in "dry" territory, or Precinct 4 of Dallas County, Texas and therefore ruled that alcoholic beverages could not legally be sold on said premises.

■ Appellants, by their trial amendment, specifically sought an affirmative declaration of legality of the sale of alcoholic beverages on their leased premises. They contended in pleadings and proved by witnesses that the land in question was originally located in what is now Precinct 1, Dallas County, Texas, admittedly "wet" territory. By seeking affirmative relief appellants necessarily assume the burden of proving that the land in question was located in "wet" territory. During the trial of the case no contention was raised by any party, or any witness, that any other area of Dallas County other than Precinct 1, was "wet". During the trial of the case the trial court inquired of counsel whether there was any question but that the "wet" area of Dallas County was Precinct 1. No one interposed a contrary position and the case proceeded upon that theory.

■ It was only in an amended motion for new trial that appellants, for the first time, present the question which they now raise. We believe that an examination of the record demonstrates clearly that the parties tried the issue of "wet" and "dry" areas by implied consent so that any error (and we do not say that there was error) was waived.

■ Furthermore, there is abundant evidence in this record to overcome appellants' contention of "no evidence" on the issue in question. That the line (White Rock Creek) between Precincts 1 and 4 was the dividing line between "wet" and "dry" areas was testified to by Marshall Rosenfeld, as follows:

"Q. And why is this the first chance or the last chance?

"A. Well, because it is the closest one to the wet and dry line, which happens to be White Rock Creek; it's the last stop going out and it's the first stop coming into town."

The witness Cecil Ridgell, a former Texas Liquor Control Board employee, testified that the land lying on the east of White Rock Creek is "dry":

"Q. All right, Mr. Ridgell, where is the wet and dry boundaries of Dallas, do you know?

"A Yes, sir.

"Q. How do you know, Mr. Ridgell?

"A. Well, I retired from the Liquor Control Board and I had charge of this District for approximately four years.

"Q. Was it a part of your responsibility to know where the wet and dry boundary line of Dallas County was?

"A. Yes.

"Q. And in your performance of that responsibility, did you acquaint yourself with where the wet and dry boundary line of Dallas County was?

"A. Yes, sir.

"Q. And what is the wet and dry boundary in this general area?

"A. Well, on the east, it's White Rock Creek.

"Q. All right, and if a piece of property is east of White Rock Creek, it's—

"A. Dry.

"Q. Dry?

"A. Yes.

"Q. And if it's on the west side of White Rock Creek—

"A. It's wet from there to the river.

"Q. To the Trinity River?

"A. Yes.

"Q. All right now, with that information, Mr. Ridgell, do you have an opinion

as to whether or not the piece of property by the Gas Company property was the wet side or the dry side of White Rock Creek?

"A. I would say it's dry.

"Q. And have you had occasion to be a Liquor Control Enforcement Officer in that general area down in those bottoms?

"A. Yes, sir. I have stopped a many a one out there.

"Q. All right, and before you arrested them, you made sure you knew where you were?

"A. Yes, sir.

"Q. And if you had arrested anybody on that piece of property right there by the Gas Company's property, would that have been in a wet area or a dry area?

"A. It would have been in a dry area and he would have paid a fine."

By their second point appellants contend that the judgment of the trial court is contrary to the great weight and preponderance of the evidence in that the testimony is overwhelming in demonstrating that the area in question is located within the limits of Justice of the Peace Precinct 1 of Dallas County, Texas, a "wet" area. We have carefully examined the record in considering this "insufficient evidence" point in the light of the well established rule pronounced by the Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Having done so we cannot say that the judgment of the trial court is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

The witness J. M. Iley testified that he had been familiar with the tract of land in question for about fifty years; that he owned part of it and was lessee of a portion of it for about ten or fifteen years. He testified that during the last fifty years he had been personally acquainted with the main channel of White Rock Creek and that during this fifty years such channel had been no closer than 300 to 350 feet from the tract of land in question which meant that the disputed area was definitely in "dry" territory.

The witness Cecil Ridgell testified that he was thoroughly familiar with the land in question for many years. He had recently retired from the Liquor Control Board and had been in charge of this district for about four years. As such it was his responsibility to know where the "wet" and "dry" boundary line of Dallas County was and in the performance of that responsibility he had acquainted himself with the location of the "wet" and "dry" boundary line which was White Rock Creek. He testified that the tract of land in controversy was on the "dry" side of White Rock Creek.

Appellants' witnesses testified to the contrary and certain exhibits introduced by appellants tended to show that the territory was in "wet" territory.

■ It is sufficient to say that the testimony was sharply conflicting on the only issue of fact before the court, that is, the true location of the property in question. The trial court observed the witnesses and examined the exhibits and concluded that the area was not in "wet" territory as contended by appellants. No findings of fact or conclusions of law were filed by the trial court and therefore all facts necessary to support the judgment are presumed to have been found in favor of the judgment. The court impliedly found, based upon sufficient evidence, that the land in question lay on the east side of White Rock Creek at the time Prohibition was repealed. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114.

By their third point appellants say that the trial court committed error in granting appellees any relief because there is no evidence in the record that appellees have any interest in the property in question and therefore the trial court was without

jurisdiction to grant appellees relief absent a justiciable controversy between appellants and appellees. We find no merit in this contention and overrule same.

The action was originally filed by Rosenfeld and Coleman, owners of a liquor store on Second Avenue approximately three-quarters of a mile from the property in question, seeking a declaratory judgment of the district court that the area in question was an area where the sale of alcoholic beverages was prohibited by the laws of the State of Texas. The suit named as defendants, Steelman and Vince as well as Harold Shank, City Secretary of the City of Dallas, and the County Clerk of Dallas County. The City Secretary, by answer, prayed the court to declare the rights and status of the land in question. During the trial of the case the district judge raised the question as to whether or not there was a justiciable controversy between appellants and appellees whereupon, leave of court being obtained, appellants filed a trial amendment alleging their interest in the real estate in question and that a bona fide controversy existed between appellants and the City Secretary and the County Clerk of Dallas County in that the City Secretary and County Clerk had declined to certify the area in question as being an area where the sale of alcoholic beverages was authorized and that appellants were entitled to a determination of such rights. At the conclusion of the testimony the court entered judgment declaring that alcoholic beverages may not legally be sold on the land in question. Obviously, the judgment entered by the court did not award specific relief to any parties but merely decreed that the sale of alcoholic beverages is not lawful on the subject land. The court did specifically deny the relief prayed for by Steelman and Vince.

■ Without dispute or controversy there is a justiciable controversy between appellants and the City Secretary of the City of Dallas and the County Clerk of Dallas County. The trial court settled this controversy by judgment. We find that the trial court had jurisdiction to render the judgment and we have jurisdiction to hear appellants' appeal from such judgment.

By their fourth point of error appellants complain of the trial court's action in refusing to admit in evidence certain maps, being Exhibits 4 and 10, said maps being used by the Commissioners Court of Dallas County, Texas and the Building Inspector's Office of the City of Dallas in determining the location of "wet" and "dry" areas in Dallas County, Texas. Exhibit 4 was a map from the Clerk of the Commissioners Court of Dallas County which shows the boundary of Precinct No. 1 as the division between Precinct 1 and Precinct 4 along White Rock Creek. Appellants offered this map in evidence under the provisions of Art. 3731a, Vernon's Ann.Civ.St., as being part of the official records of the County Clerk of Dallas County. Exhibit 10, a map from the office of the Building Inspector of the City of Dallas, was offered in evidence as part of the official records of the City of Dallas. This map indicated the "wet" areas in Dallas County. The court refused to admit either exhibit in evidence.

■ We have carefully examined the record in connection with the tender of these exhibits and find that there is sufficient doubt cast upon the accuracy of the maps in question to justify the trial court's exclusion of same. Moreover, appellants have not demonstrated to us that the refusal on the part of the trial court to admit such exhibits probably resulted in the rendition of an improper judgment. Rule 434, Vernon's Texas Rules of Civil Procedure.

Finally, appellants urge reversal of the trial court's judgment because of the refusal of the judge to grant a new trial based upon newly discovered evidence. In their amended motion for new trial appellants allege that since the trial of the cause and "after considerable difficulty, these defendants have located a John Shilling who resides at 3521 Alta Vista Drive in Waco, Texas who,

as an employee of Austin Road Company, was in charge of the work in connection with relocating the main stream of White Rock Creek for the Highway Department of the State of Texas in 1949 and that such witness would be able to identify the maps which have been offered as evidence and to testify that the location of White Rock Creek was as shown on said maps and work plans prepared by the Highway Department of the State of Texas, and that White Rock Creek at that time was located as shown on such maps. That the testimony of this witness was not available at the time of the trial of said cause because his whereabouts was not known and the failure to locate him was not caused by the lack of diligence on the part of these defendants." No affidavit of the missing witness, or anyone else, was attached to the motion for new trial. The witness was not called to testify at the hearing of the motion for new trial. While not alleged in the motion for new trial appellants, in their argument and statement under this point of error, contend that the witness, if present, would have identified defendants' exhibits introduced during the trial of the case, and being maps and plats made by the Highway Department of the State of Texas in connection with the acquisition of certain right of way for the widening of Highway 40, as well as other changes in the terrain in connection with the change of the highway, all of which would have supported appellants' contention that the area in question was in truth and in fact located in Precinct 1 rather than in Precinct 4.

 Appellants' point is without merit for several reasons. In the first place, it is well settled that a motion for new trial on the grounds of newly discovered evidence must be supported by an affidavit of the missing witness. Associates Investment Co. v. Lenz, Tex.Civ.App., 288 S.W. 2d 857. This is true even though the motion is verified and not controverted. Hammer v. City of Dallas, Tex.Civ.App., 273 S. W.2d 646. Here there was neither an affidavit on the part of the missing witness nor was the motion verified by appellants' attorneys or anyone else. Furthermore, not only must the motion be accompanied by an affidavit of the person by whom the expected proof is to be made, but such witness must be called to testify on the hearing of the motion. Southern Motor Lines v. Creamer, Tex.Civ.App., 113 S.W.2d 624; 41 Tex.Jur. 2d, § 194, p. 417. Considering appellants' amended motion for new trial in its most favorable light we are convinced that the testimony of the absent witness would have amounted to nothing more than cumulative evidence of other testimony in the record. 41 Tex.Jur.2d, § 122, p. 310. We find no abuse of discretion on the part of the trial court in overruling appellants' amended motion for new trial based upon the newly discovered evidence of the witness Shilling.

Having carefully examined all of appellants' points and finding the same to be without merit they are overruled and the judgment of the trial court is affirmed.

Affirmed.